FILED & ENTERED

JAN 28 2011

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY toliver    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No: 2:03-bk-37579-TD |
| Four Star Financial Services, Inc., | Chapter 7 |
| | MEMORANDUM DECISION DENYING MARSHACK MOTION TO DISALLOW HAMMOND PRIORITY UNSECURED CLAIM |
| Debtor. | |

  This memorandum is issued in response to chapter 7 trustee Richard Marshack's (Marshack) Motion for Order Disallowing Priority Unsecured Claim filed by Brian Hammond (Hammond) as class representative in the estate of Four Star Financial Services, Inc. (Four Star). The following are my findings of fact, conclusions of law and my decision based on the pleadings, evidence and briefs.

  **Background**. Hammond's claim derives from consumer transactions involving Thousand Adventures of Iowa (TAI), a Nebraska corporation that sold campground memberships to some 65,000 individuals for their personal use. Most membership purchases were financed through retail installment contracts (RICs). Initial down payments were followed by installment payments to TAI. To raise money in the 1990s, TAI assigned many of its RICs to various third parties, including 900 Capital Services, Inc. (900 Capital). Following assignments from TAI, 900 Capital collected installment payments from TAI's members.

- 1 -

In 1997, consumers who had purchased campground memberships sold by TAI brought a class action suit in Iowa state court against TAI alleging breach of contract. The consumer plaintiffs obtained class certification in the Iowa court in July 1997. Hammond was certified in the Iowa court as a class representative. In August 1997, an involuntary chapter 11 bankruptcy petition was filed against TAI and an order for relief followed. Soon after, TAI closed down and recoveries from TAI's assets for the benefit of its creditors were slim. In 2000, the Iowa state court granted plaintiffs leave to amend their complaint to add 900 Capital and 13 other TAI assignees as defendants. None of the 13 apparently was related to 900 Capital. Four Star was not named as a defendant. As it turns out (also in 1997) pursuant to an Asset Purchase Agreement and Bill of Sale (Purchase Agreement), Four Star purchased substantially all the assets of 900 Capital and assumed almost all of 900 Capital's liabilities and obligations.

Later, on October 24, 2003, an involuntary chapter 11 bankruptcy was filed in this court against Four Star. An order for relief was entered against Four Star on November 26, 2003. Marshack was appointed as Four Star's chapter 11 trustee on December 11, 2003. The Four Star case was converted to chapter 7 on March 23, 2004.

Meanwhile, in December 2003, after months of Iowa state court scrimmaging with 900 Capital and its attorneys, Hammond obtained a $4,528,798 default judgment against 900 Capital on the assigned TAI RICs. Chapter 7 bankruptcy for 900 Capital followed in January 2004 in this court; Marshack was appointed as trustee.

Prior to bankruptcy, Four Star purported to be in the business of factoring account receivables, providing bridge financing for businesses and investing in various other enterprises. The records of this court will show and I take judicial notice of the fact that Four Star was operating a Ponzi scheme. One of its three principals went to jail. The other two filed bankruptcy petitions and suffered chapter 7 liquidation of their estates which were administered on my docket. Many claims were filed in the Four Star case and against its principals and resulted in the recovery of millions of dollars by Marshack on

behalf of the Four Star estate. Marshack's recovery efforts are ongoing. They have resulted in orders of this court approving substantial fee awards to Marshack and his professionals.

On December 29, 2003, Hammond filed a proof of claim (Claim No. 9) in the amount of $4,528,798 in Four Star's bankruptcy based largely (but not entirely) on the Iowa judgment obtained against 900 Capital.

**Marshack's motion**. Marshack challenges Claim No. 9. Briefly stated, Marshack asserts the following: (1) Hammond cannot demonstrate by a preponderance of the evidence that Four Star has any liability to TAI members under the Federal Trade Commission (FTC) so-called Holder Rule, 16 C.F.R. §433, because that rule is trumped by the federal Truth in Lending Act (TILA); (2) Four Star's alleged liability as 900 Capital's assignee of the TAI RICs is time barred by the TILA statute of limitations under 15 U.S.C. §1640(e); (3) any recovery by Hammond should be limited in amount by §1640(a)(1)(B); (4) Claim No. 9 does not qualify for priority under Bankruptcy Code §507(a)(7); and (5) the Iowa default judgment against 900 Capital does not warrant the application of claim preclusion principles in the Four Star case.

As a preliminary matter, I overrule Marshack's evidentiary objections based on Hammond's written responses which are sustained.

Turning to the details of Marshack's motion, Marshack urges that the FTC Holder Rule, which abrogates protections available to an assignee when required contract language or legend is written into retail installment contracts, is trumped by provisions of TILA found in 15 U.S.C. §1641(a) and in the Truth in Lending Simplification Act of 1980. Relying on a line of cases beginning with Taylor v. Quality Hyundai, Inc., 150 F.3d 689 (7th Cir. 1998), Marshack urges that the intent of TILA is to narrow the scope of potential assignee liability under consumer credit contracts such as TAI's RICs. Specifically, Marshack points to Psensky v. American Honda Fin. Corp., 875 A.2d 290, 292 (N.J. Sup. Ct. App. Div. 2005). In my view, Psensky supports the notion that plaintiffs may sue consumer loan assignees for TILA violations only when the violation is apparent on the face of a disclosure document. However, the

- 3 -

plaintiff class here did not assert that there was a violation of TILA disclosure requirements. Marshack has conceded that the RICs contained the appropriate TILA disclosures.

Marshack also asserts that Hammond's claim against Four Star is time barred by TILA's one-year statute of limitations found in 15 U.S.C. §1640(e). Marshack claims that (1) the TILA limitations period begins to run as of the date of the TILA violation; (2) the alleged breach claimed by Hammond occurred in 1997; and (3) as of October 2003, the date of the involuntary petition commencing Four Star's bankruptcy, the class plaintiffs had not sued Four Star.

Even if not time barred, Marshack alternatively contends that in accordance with TILA §1640(a)(1)(B) any allowable recovery by Hammond must be limited to the lesser of $500,000 or one percent of Four Star's net worth. In light of 900 Capital's insolvency (among other things), Marshack reasons that Hammond's class claim filed in the Four Star case is now worthless, though the record in this case and several related adversary proceedings reveals quite the opposite, that is, that Marshack has recovered and is still holding several million dollars for the benefit of the estate and may recover even more.

Marshack also asserts that in the event that the Hammond claim is allowed in full and is not time barred, the claim is not entitled to priority treatment under 11 U.S.C. §507(a). According to Marshack, Hammond has not established a claim against the Four Star estate demonstrating that a "deposit" was made within the meaning of 11 U.S.C. §507(a)(7). In construing the meaning of "deposit" under §507(a)(7), Marshack contends that a deposit made pursuant to the Bankruptcy Code must arise in the context of the specific bankruptcy case where the claim is pending and must have been paid directly to the debtor. Relying on Reagans v. Mountain High Coachworks, Inc., 117 Ohio St.3d 22 (2008), Marshack argues that a bankruptcy priority claim is limited to the amount of the deposit received <u>by the debtor</u> in connection with the purchase, lease or rental of property. In support, Marshack asserts, first, that Four Star somehow was not an assignee of TAI RICs and, second, never collected a dime from any TAI/900 Capital class member. Thus, Marshack argues that, at most, Hammond may have a general unsecured claim, and then, only if Hammond is able to prove that he holds an enforceable

- 4 -

obligation against Four Star. I conclude that Marshack's thesis is unconvincing, for reasons discussed later.

As for the application of claim preclusion principles, Marshack urges that the Iowa judgment against 900 Capital is irrelevant to Hammond's Claim No. 9 because the prior action against 900 Capital did not establish that Four Star was liable for anything. Marshack points out that Four Star was not named in the Iowa judgment against 900 Capital, and the Iowa state court record did not address any issue of liability derivative of an assignment by 900 Capital to Four Star. Even if the default judgment against 900 Capital otherwise might have had any application here, Marshack urges that the judgment is void in the Four Star estate because it was entered in the Iowa court without relief from the automatic stay in the Four Star bankruptcy case. As such, Marshack asserts, the Iowa judgment against 900 Capital is void against the Four Star estate.

Finally, relying on In re Harrison, 987 F.2d 677 (10th Cir. 1993), Marshack asserts that he has submitted sufficient evidence to place Hammond's entitlement at issue and therefore it is Hammond's burden to go forward with the evidence to sustain his claim. Marshack contends that Hammond has not met his burden of proof and has failed to demonstrate by a preponderance of the evidence that Hammond is entitled to share in the distribution of Four Star assets.

**Hammond's opposition**. Hammond advances five main arguments: (1) 15 U.S.C. §1640 does not trump the FTC Holder Rule because TILA is wholly inapplicable to the instant case; (2) Hammond's Claim No. 9 is not time barred by the TILA statute of limitations found in 15 U.S.C. §1640(e); (3) TILA does not apply to limit Hammond's recovery on Claim No. 9 under 15 U.S.C. §1640(a)(1)(B); (4) Claim No. 9 is entitled to priority under the plain meaning of 11 U.S.C. 507(a)(7); and, (5) the evidence establishes sufficient privity between 900 Capital and Four Star to apply claim preclusion principles to support a judgment against Four Star by allowing Hammond to rely on Four Star's 1997 Purchase Agreement to demonstrate Four Star's liability for the Iowa state court judgment against 900 Capital.

First, in support of Hammond's challenge to Marshack's motion asserting that TILA §1640 trumps the FTC Holder Rule, Hammond cites Bescos v. Bank of Am., 105 Cal. App. 4th 378 (2003), for

the proposition that Congress enacted TILA as a disclosure statute to encourage the informed use of credit. Hammond asserts that Marshack inappropriately exaggerates the scope and application of TILA to this dispute. Hammond demonstrates that the language of §1640 is limited to cases seeking civil remedies in actions brought based on disclosure violations and has no application here.

Hammond points out, correctly I conclude, that every case cited by Marshack to suggest that the FTC Holder Rule is trumped by TILA deals solely with underlying claims based on disclosure violations. In response to Marshack's assertion that TILA should govern the outcome in this case, Hammond cites Scott v. Mayflower Home Improvement Corp., 831 A.2d 564 (N.J. Super. Ct. Law Div. 2001), in support of his position that the FTC Holder Rule is not trumped by TILA when the plaintiff's allegations do not raise TILA disclosure issues. Here, the evidence supports the conclusion that Hammond's Claim No. 9 is based on principles of breach of contract, not RIC disclosure deficiencies. As such, Scott defeats Marshack's position based on Psensky, 875 A.2d 290 at 292 (N.J. Sup. Ct. App. Div. 2005).

Second, Hammond disputes Marshack's application of the TILA statute of limitations to this matter. Hammond concedes that 15 U.S.C. §1640(e) generally provides a one-year statute of limitations for TILA claims. However, Hammond contends that its application is limited to "any action under §1640(e)" and points out that Claim No. 9 is not such an action. Hammond points out, I believe correctly, that Iowa law provides the applicable statute of limitations, not TILA. Hammond points out that Iowa's statute of limitations based on claims for breach of written contract is 10 years, as set forth in Title XV of the Iowa Code Judicial Branch and Judicial Procedures §614.1(5), and that both the Iowa class action and Hammond's Claim No. 9 were initiated well within that period.

As for Marshack's claim that TILA §1640(a)(1)(B) limits any allowable recovery on Claim No. 9, Hammond asserts that TILA is wholly inapplicable to this case. Hammond points out that recovery is governed by the language in the RICs and the preclusive effect of the 900 Capital judgment in the Four Star bankruptcy case. As for the contract language, Hammond's evidence demonstrates persuasively that the FTC Holder Rule legend was included in every relevant TAI contract and put each assignee,

900 Capital and Four Star, on notice that it was subject to all claims and defenses that a claimant could assert against the original seller.  Hammond further relies on applicable law establishing persuasively that TAI consumers are entitled to a return of all amounts paid on each contract because the language in each RIC does not limit recovery to the amount received by any holder.  Rather, recovery is predicated on the amount paid by the purchaser of services under each RIC.  Citing <u>Alduridi v. Community Trust Bank, N.A.</u>, 1991 WL 969644 (Tenn. Ct. Appeal), Hammond argues persuasively that in cases where a down payment has been made to an original vendor or lender before the RIC was assigned, as the evidence shows was the case here, the court should calculate the amount the claimant is entitled to recover based on the total amount paid to all parties in the chain of ownership of the RICs in issue.

Hammond's assertion that his Claim No. 9 is entitled to priority under a plain reading of §507(a)(7) is sensible and persuasive.  In the words of §507(a)(7), priority is granted to ". . . allowed unsecured claims of individuals, to the extent of $2,100 [the statutory amount in effect in 2003, the year of commencement of the Four Star bankruptcy[1]] for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided."  11 U.S.C. §507(a)(7).  I conclude that the statute does not contain the words "to the debtor" in reference to TAI RIC payments received by Four Star, as Marshack suggests.  Rather, priority is granted to the individual claimants whom Hammond represents.  Moreover, §507(d) supports Hammond's position that the priority established by §507(a) is not limited to payments and/or deposits received directly by Four Star as the assignee, as Marshack contends.  In §507(d), Congress clearly appears to have limited who may assert priority only by excluding subrogees, not claimants.  Thus, Hammond is correct that the plain language of §507 supports the view that the TAI/900 Capital

---

[1] In 2003, the present §507(a)(7) was designated §507(a)(6).

class plaintiffs, and, hence, Hammond's Claim No. 9, are entitled to priority up to the statutory limit in effect in 2003 when the Four Star case was filed and an order for relief was entered.

**Claim Preclusion**.  Marshack cites In re Ziadeh, 276 B.R. 614 (Bankr. N.D. Iowa 2002), for the requirements of claim preclusion in Iowa, as follows: (1) the first suit results in a final judgment on the merits; (2) the first suit is based on proper jurisdiction; (3) both suits involve the same cause of action; and (4) both suits involve the same parties or their privies.  Marshack does not dispute that the first suit against 900 Capital was a final judgment on the merits or that it was based on proper jurisdiction. Rather, Marshack takes issue with the third and fourth elements of claim preclusion.

Marshack argues that Four Star was not named as a defendant in the Iowa state court action and cannot be found to be in privity with 900 Capital.  Marshack asserts that privity cannot be established here because (1) 900 Capital had neither the financial ability nor financial incentive to contest the Iowa class action and thus cannot be found to have represented the interests of Four Star in the Iowa action, and (2) Four Star's status as holder of the TAI RICs was never established in the Iowa court.

Hammond responds that under the principles of claim preclusion, Four Star's privity with 900 Capital subjects it to liability for Hammond's Claim No. 9 and binds it to the judgment against 900 Capital, provided that Hammond can establish a nexus between Four Star and 900 Capital with respect to the TAI RICs assigned by 900 Capital in 1997.  In Hammond's view, the concept of "privity" is the only aspect of claim preclusion that requires discussion.  Hammond's viewpoint and supporting evidence are discussed thoroughly in Hammond's "objection" filed May 19, 2010, in response to Marshack's motion (Hammond Opposition, 12:3–17:12, and the accompanying Napier Declaration, paragraphs 17–24, and the exhibits referred to therein).  Based on my review of the evidence and the law I conclude that Hammond is correct.

To substantiate Hammond's claim that there is privity between 900 Capital and Four Star, the Napier Declaration establishes persuasively in the following exhibits the close relationship between 900 Capital and Four Star:

- Four Star's Statement of Related Cases wherein 900 Capital was named as a related case (Exhibit 7).
- Four Star's Statement of Financial Affairs question 21 which states that 900 Capital and Four Star had overlapping owners (Exhibits 12 and 13).
- 900 Capital and Four Star had the same mailing address (Exhibits 18 and 19).
- 900 Capital and Four Star had the same bankruptcy lawyers (Exhibit 13).
- Four Star's Statement of Financial Affairs listed the Iowa action against 900 Capital as one of the suits to which Four Star was a party within one year of the Four Star bankruptcy (Exhibits 8 and 9).
- Four Star paid the attorneys' fees for 900 Capital's defense in the Iowa action (Exhibits 10 and 17).

While 900 Capital was named and served in Hammond's second amended Iowa class action petition filed in late 2000, 900 Capital apparently hid its head in the sand until mid-2002 when it moved successfully to set aside a prior Iowa judgment entered against it by default. Procedural resistance by 900 Capital continued until the evidentiary hearing on Hammond's prove up and the December 18, 2003 judgment entered by the Iowa court, though the Iowa court invited 900 Capital to participate in Hammond's prove up evidentiary hearing by cross examination of Hammond's evidence in spite of the existing default of 900 Capital. The procedural resistance of 900 Capital was discussed at length in several rulings of the Iowa court attached to the Napier Declaration as Exhibits 20, 21, 26 and 28 as well as several supporting pleadings filed by 900 Capital and Hammond in the Iowa court attached as Exhibits 23, 24, 25 and 27. Hammond's evidence is more than sufficient to establish privity between Four Star and 900 Capital for claim preclusion purposes.

Marshack is correct that the claim against Four Star is not the same as that asserted in Iowa against 900 Capital: the Iowa judgment against 900 Capital did not resolve whether Four Star was

liable as an assignee of TAI RICs from 900 Capital; the Iowa judgment names only 900 Capital as a judgment debtor.

The "final adjudication" element of claim preclusion is met here because the state court action against 900 Capital resulted in a final adjudication of the amount of liability of 900 Capital on Hammond's <u>claim</u> on the merits. The record here establishes that the Iowa judgment against 900 Capital became a final judgment in December 2003, when it was entered and no appeal was taken. Hammond here asserts the claim against Four Star that was finally adjudicated against 900 Capital in Iowa.

Claim preclusion principles in Iowa (and for that matter in the Ninth Circuit) preclude relitigation of the same claim in this court based on the TILA and FTC Holder Rule, as it may effect the Iowa judgment entered against 900 Capital.

For purposes of claim preclusion, privity has been established between 900 Capital and Four Star. Hammond has established that 900 Capital and Four Star shared the same business addresses and the same lawyers in their bankruptcy cases. In addition, Four Star acknowledged the Hammond class action in its Statement of Financial Affairs and Four Star paid 900 Capital's attorneys' fees in defending the Iowa class action. Marshack has not successfully challenged the substance of any evidence that Hammond offered to prove his case for privity between 900 Capital and Four Star. Finally, <u>In re Ziadeh</u>, 276 B.R. 614 (Bankr. N.D. Iowa 2002), states that Iowa law precludes parties from disputing a default judgment because a default judgment is considered to be a final adjudication on the merits. Thus, the FTC Holder Rule contributed to the finding of liability in the Iowa judgment ultimately based on substantive Iowa contract law while Hammond's evidence on his post-judgment claim against Four Star now establishes the liability of Four Star for the Iowa judgment against 900 Capital.

Each TAI RIC contained the legend required by the FTC Holder Rule. Four Star purchased most of the assets and assumed most of the liabilities of 900 Capital in 1997. Four Star's Purchase Agreement included an assumption of liability for the RICs that were the subject of the Iowa class action. The RICs contained the legend: "SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE

- 10 -

DEBTOR COULD ASSERT AGAINST THE SELLER . . . RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER." As a result, liability as specified in the Holder Rule includes amounts that TAI consumers paid to TAI or 900 Capital and whether or not Four Star collected any money from TAI consumers.

The FTC Holder Rule legend stated clearly to all potential holders that if they accept an assignment of the contract, they will be subject to any claims or defenses that may later be made against the seller. The Iowa court's finding against 900 Capital is consistent with this notion. Four Star is bound to the Iowa judgment by the principles of claim preclusion insofar as the Iowa judgment supports Hammond's claim.[2]

Hammond's Claim No. 9 was filed on behalf of a class certified by the Iowa court, pre-judgment and prepetition as to 900 Capital. Hammond's Claim No. 9 does not require re-certification here to be eligible for payment in the Four Star bankruptcy estate. The Four Star estate should be held in privity with 900 Capital. Hammond has satisfied all criteria of the Restatement of Judgments for application of the principles of claim preclusion.

Iowa law also supports the application of claim preclusion principles to this case: (1) the Iowa class action resulted in a final judgment on the merits in favor of Hammond as class representative and against 900 Capital; (2) the Iowa court had jurisdiction of the matter; (3) the Iowa action involved the same claims to recovery asserted against Four Star by Hammond as class representative; and (4) the Hammond claim here against Four Star involves the same parties or their privies as the Iowa class action. Hammond's evidence in support of his claim satisfies Hammond's burden as to the liability of the Four Star estate, the only added element here being proof positive of Four Star's 1997 acquisition of 900 Capital's TAI RICs and assumption of 900 Capital's liabilities for 900 Capital's TAI RICs. Such proof has been provided here in support of Claim No. 9.

---

[2] Hammond's evidence concerning the 1997 Four Star purchase of 900 Capital's assets and assumption of its liabilities establishes that while 900 Capital reserved some assets and liabilities to itself in the Purchase Agreement, none of the so-called retained liabilities under the 1997 Purchase Agreement is relevant here.

- 11 -

**Issue Preclusion**.  We are left then with a question of <u>issue</u> preclusion.  Hammond cites the Restatement (Second) of Judgments (Restatement) §27 and <u>Robi v. Five Platters, Inc.</u>, 838 F.2d 318, 322 (9th Cir. 1988), to explain.

Restatement §27 states:

> **When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim**.
>
> *Exceptions to this general rule are stated in §28.*

Restatement §27 (emphasis in original).  <u>Robi</u> is consistent with the Restatement.

The Restatement's introduction to the subject of issue preclusion says, among other things,

> . . . There is a close relationship between the definition of a "claim" and the sweep of the rule of issue preclusion.  Courts laboring under a narrow view of the dimensions of a claim may on occasion have expanded concepts of issue preclusion in order to avoid relitigation of what is essentially the same dispute.  Under a transaction approach to the concept of a claim, on the other hand, there is less need to rely on issue preclusion to put an end to the litigation of a particular controversy. . . .

Restatement at 250.  I conclude that this dispute presents us with the latter situation.

Comment "a" to Restatement §27 says:

> . . . A judgment for the plaintiff in the first action may have the effect of enabling him to recover in the second action without proving his claim, provided that the controlling issues were litigated and determined in the prior action, but the defendant is not precluded from defending the second action on the basis of an issue not litigated and determined in the first action. . . .

Restatement at 251.  I believe a corollary to the above commentary allows Hammond to litigate here the specific <u>issue</u> of Four Star's liability through Claim No. 9.

Issue preclusion generally requires that there be: (1) the same issue; (2) actually litigated and determined; (3) by a valid and final judgment; (4) as to which the determination is essential to the judgment.  The issue of Four Star's liability for the claims asserted in Iowa against 900 Capital was not "actually litigated" in Iowa, nor was the determination of that issue essential to the Iowa judgment against 900 Capital.

<u>Claim</u> preclusion establishes only that the claims against 900 Capital were resolved in the Iowa litigation for purposes of merger and bar.  The Iowa judgment against 900 Capital does not preclude

litigation here of a separate claim against Four Star, raising the <u>issue</u> of Four Star's liability for the claim litigated in Iowa. That <u>issue</u> was not litigated in Iowa nor was it essential to the Iowa judgment. The judgment is not conclusive as to Claim No. 9 in the Four Star case as to that issue which might have been litigated and determined in Iowa, but it was not. As expressed in the Restatement:

> **Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between parties is not precluded in the following circumstances:**
>
> * * *
>
> **(3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or**
>
> * * *
>
> **(5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.**

Restatement §28 (emphasis in original).

Hammond's Claim No. 9 seems to fit the exceptions cited and I so conclude (a) in light of the long and complex history of the Iowa litigation, (b) the close relationship established between 900 Capital and Four Star, and (c) the evidence presented here.

The Restatement continues, as follows:

> **A valid and final judgment of a state court has the same effects under the rules of res judicata in a subsequent action in a federal court that the judgment has by the law of the state in which the judgment was rendered, except that:**
>
> * * *
>
> **(1) A determination of an issue by a state court does not preclude relitigation of that issue in federal court if according preclusive effect to the determination would be incompatible with a scheme of federal remedies which contemplates that the federal court may make an independent determination of the issue in question.**

Restatement §86 (emphasis in original).

**Conclusions**.  The Four Star bankruptcy and the resulting bankruptcy claims process would seem to be an appropriate opportunity for a determination of Hammond's right on behalf of the class members he represents in Iowa to enforce his claim against Four Star.

For the reasons set forth above and in the Hammond pleadings in response to Marshack's motion, Marshack's motion is denied.  A separate judgment should be lodged allowing Hammond's Claim No. 9 in full as a claim entitled to seventh priority under Bankruptcy Code §507(a)(7).

DATED: January 28, 2011



United States Bankruptcy Judge

- 14 -

**NOTE TO USERS OF THIS FORM**:
**1)**  Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
**2)**  The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3) Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
**4**)  **Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*)  MEMORANDUM DECISION DENYING MARSHACK MOTION TO DISALLOW HAMMOND PRIORITY UNSECURED CLAIM  was entered on the date indicated as AEntered@ on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (ANEF@)** B Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **_1/28/11_**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

*A Eric Aguilera on behalf of Plaintiff Richard A Marshack Chapter 7 Trustee*
*eaguilera@bfka-law.com*

*Kyra E Andrassy on behalf of Attorney Weiland, Golden, Smiley, Wang Ekvall & Strok LLP*
*kandrassy@wgllp.com*

*Martin R Barash on behalf of Plaintiff Grizzly Peak Investments LLC*
*mbarash@ktbslaw.com*

*James C Bastian on behalf of Plaintiff Richard A*
*jbastian@shbllp.com*

*Stephen F Biegenzahn on behalf of Plaintiff Richard Marshack*
*efile@sfblaw.com*

*Mark Bradshaw on behalf of Plaintiff Richard A Marshack Ch 7 Trustee*
*mbradshaw@shbllp.com*

*Lynda T Bui on behalf of Plaintiff Richard A*
*lbui@shbllp.com*

*Melissa Davis on behalf of Plaintiff Richard Marshack*
*mdavis@shbllp.com*

*Jerold Fagelbaum on behalf of Defendant Fagelbaum & Heller LLP*
*office@fhllplaw.com*

*Philip A Gasteier on behalf of Defendant Alberta Stahl*
*pag@lnbrb.com*

*Jeffrey I Golden on behalf of Trustee Richard Marshack*
*jgolden@wgllp.com*

*D Edward Hays on behalf of Attorney MARSHACK HAYS LLP*
*ehays@marshackhays.com*

*Matthew Heyn on behalf of Defendant David Roberts*
*mheyn@ktbslaw.com*

*Sean A Kading on behalf of Trustee Richard Marshack*
*skading@marshackhays.com*

*Manijha Kadir on behalf of Plaintiff Richard A*
*mkadir@shbllp.com*

*Richard A Marshack*
*pkraus@marshackhays.com, rmarshack@ecf.epiqsystems.com*

*Richard A Marshack on behalf of Trustee Richard Marshack*
*pkraus@shbllp.com, rmarshack@ecf.epiqsystems.com*

*David W. Meadows on behalf of Attorney Douglas Napier*
*david@davidwmeadowslaw.com*

*Irena L Norton on behalf of Plaintiff Richard A*
*inorton@shbllp.com*

*Sean A Okeefe on behalf of Defendant William Peterson*
*sokeefe@okeefelc.com*

*Joel G Samuels on behalf of Creditor Suisse First Boston Mortgage Capital LLC*
*jsamuels@sidley.com*

*Michael A Scherago on behalf of Defendant Alan Sharpiro*
*mscherago@landslawyers.com*

*Leonard M Shulman on behalf of Plaintiff Richard A Marshack Chapter 7 Trustee*
*lshulman@shbllp.com*

*United States Trustee (LA)*
*ustpregion16.la.ecf@usdoj.gov*

*David Weinstein on behalf of Defendant Anthony Delfino*
*david.weinstein@hro.com*

*Sharon Z Weiss on behalf of Defendant Anthony Delfino*
*sharon.weiss@hro.com*

*Miles A Woodlief on behalf of Defendant Condor Investment Corporation*
*mawoodlief@earthlink.net*

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

<u>Debtor</u>
Four Star Financial Services
11755 Wilshire Blvd Ste 1350
Los Angeles, CA 90025

<u>Attorney for Debtor</u>
Arthur A Greenberg
16000 Ventura Blvd Ste 1000
Encino, CA 91436

Main Document    Page 17 of 17

<u>Attorney for Brian Hammond</u>
Douglas Napier
14591 N. 100th Way
Scottsdale, AZ  85260

☐ Service information continued on attached page

**III.  TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an ⌐Entered¬ stamp, the party lodging the judgment or order will serve a complete copy bearing an ⌐Entered¬ stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page